UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

HERBERT EDWARD PETTIES,　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　)　　Case No. 5:06-cv-72
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　Honorable Robert Holmes Bell
　　　　　　　　　　　　　　　　)
PATRICIA L. CARUSO, et al.,　　　)　　**OPINION**
　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　)
_____ )

　　　　　　This is a civil rights action brought by a *pro se* plaintiff pursuant to 42 U.S.C. §1983.

The court granted plaintiff leave to proceed *in forma pauperis*, in light of his indigence. (docket #

3). Plaintiff is a former state prison inmate, discharged from custody of the Michigan Department

of Corrections (MDOC) on November 26, 2005. Plaintiff believes that his discharge should have

occurred on May 7, 2004. Plaintiff initiated and then abandoned a state court habeas corpus lawsuit

raising this issue. Plaintiff also initiated, but never completed, an administrative review process

established by Michigan statute. Plaintiff never filed a federal habeas corpus petition regarding the

administration of his sentences.[1] Plaintiff filed this civil action on May 8, 2006, pursuant to section

1983, seeking an award of $2 million in monetary damages against seven defendants in their

individual and official capacities:

　　　　　　(1) Grand Traverse County Circuit Court Judge Thomas G. Power;

_____

　　　　　　[1]Throughout his complaint and brief (docket # 32) plaintiff refers to his sentences as being
void or vacated. Plaintiff's criminal convictions and sentences have never been overturned. Plaintiff
may not challenge his criminal convictions or sentences in this civil lawsuit for monetary damages.
*See Heck v. Humphrey*, 512 U.S. 447 (1994).

(2) MDOC Director Patricia Caruso;

(3) Dennis R. Straub, acting Warden of the G. Robert Cotton Correctional Facility in June 21, 1996, when plaintiff was an inmate at that prison;[2]

(4) Warden of the Pugsley Correctional Facility ("MPF") Thomas G. Phillips;

(5) MPF Record Office Supervisor Becky Kosloski;

(6) MPF Record Office "Technical" Marlene Ford; and

(7) Administrator of MDOC's Office of Audit Internal Affairs and Litigation Jeff Baumann.[3] Judge Power is the judge who presided over plaintiff's habeas corpus action in state court. The other defendants are state employees who provided responses to plaintiff's grievance and other inquiries concerning the execution of his sentences. Plaintiff contends that defendants violated his federal rights under the First, Fifth, Eighth, and Fourteenth Amendments, 5 U.S.C. § 552a[4] and the "Ultra Vires Intentional Tort Act."[5] (Compl. at 4-5). Plaintiff alleges that defendants violated his state-law rights under Articles 1, 2, 3, and 17 of the Michigan Constitution. (Compl. at 4).

The matter is now before the court on a Rule 12(b)(6) motion by defendants Caruso, Straub, Phillips, Kosloski, Ford, and Baumann. (docket # 25). Plaintiff filed his response (docket # 32), and defendants' Rule 12(b)(6) motion is ready for decision. The answer filed on behalf of

---

[2]Defendant Straub is currently MDOC's deputy director.

[3]Plaintiff's complaint and brief make repeated references to municipal liability. It is patent that the defendants are not municipalities.

[4] The Privacy Act defines the term "agency" as "an agency of the federal government." *Schmitt v. City of Detroit*, 395 F.3d 327, 329 (6th Cir. 2005). Thus, plaintiff states no possible Privacy Act claim against defendants.

[5]There is no federal statute known as the "Ultra Vires Intentional Tort Act."

defendant Judge Thomas G.  Power contains a request that the court dismiss plaintiff's complaint (Answer at 5, docket # 17), but his attorney neglected to file a motion.  Nonetheless, under the provisions of federal law, PUB. L. No. 104-134, 110 STAT. 1321 (1996), the court is required to dismiss any action brought under federal law *in forma pauperis* if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. § 1915(e)(2).  Upon review, it is patent that plaintiff's claims against Judge Power are  barred by absolute judicial immunity, and that plaintiff's complaint fails to state a claim against any defendant.  Accordingly, defendants' Rule 12(b)(6) motion will be granted, and plaintiff's complaint will be dismissed.

## **Applicable Standard**

Under Rule 12(b)(6), a complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006); *Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004).  The court must construe the complaint in the light most favorable to plaintiff, accept all factual allegations as true, and determine whether it is established beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *See Roberts v. Ward*, 468 F.3d 963, 967 (6th Cir. 2006); *Flaim v. Medical Coll. of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005).  While the standard is decidedly liberal, it requires more than the bare assertion of legal conclusions.  *See Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006); *Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 671-72 (6th Cir. 2006); *National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468 (6th

Cir. 2005).  Courts are not required to conjure up unpleaded allegations.  *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Hall v. Beast*, 116 F. App'x 557, 559 (6th Cir. 2004).  The court need not accept as true legal conclusions or unwarranted factual inferences.  *See  Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003).  *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even the lenient treatment generally given *pro se*  pleadings has its limits.  *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).  "In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993); *see Southeast Texas Inns, Inc.*, 452 F.3d at 671-72; *Mezibov*, 411 F.3d at 716.

Plaintiff elected to support his complaint with exhibits.  Plaintiff's exhibits have been considered in evaluating defendants' motion to dismiss, but have not converted the defendants' motion to dismiss into a motion for summary judgment.  *See* Fed. R. Civ. P. 10(c); *Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 603-04 (6th Cir. 2005);  *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) ("'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'") (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)); *see also Never Tell Farm, LLC v. Airdrie Stud, Inc.*, 123 F. App'x 194, 197 (6th Cir. 2005).

## Facts

Plaintiff has a lengthy history of criminal convictions.  In 1978, plaintiff was sentenced to 2-to-4 years on a felonious assault conviction.  Plaintiff was convicted of additional felonies in 1992.  On May 26, 1992, plaintiff was sentenced to serve 1 year and 8 months-to-4 years' imprisonment on a  conviction for possession of a controlled substance, and 1 year and 8 months-to-2 years and 6 months on his conviction for carrying a concealed weapon.  MDOC records refer to these sentences as Records "02" and "03" respectively, with Record 02 carrying the longer sentence of up to 4 years.  On May 1, 1994, after serving less than two years in prison, plaintiff was released on parole.[6]  While on parole, plaintiff committed two additional felonies.  On February 8, 1995, plaintiff was found guilty in Detroit Recorder's Court of assault with intent to do great bodily harm less than murder, in violation of Mich. Comp. Laws § 750.84, and entering without breaking, in violation of  Mich. Comp. Laws § 750.111.  Thereafter, plaintiff entered a guilty plea to the sentencing enhancement of being a habitual offender, fourth felony offense.  On February 23, 1995, Judge Helen E. Brown sentenced plaintiff to 5-to-10 years' imprisonment, to be served consecutively to the remainder of plaintiff's sentence for up to 4 years for possession of a controlled substance.  (2/23/95 Judgment of Sentence Commitment to Corrections Department).   The parole board rescinded plaintiff's parole because plaintiff had been convicted of committing additional crimes while on parole.

---

[6]A paroled Michigan prisoner remains in the legal custody of the Michigan Department of Corrections.  MICH. COMP. LAWS § 791.238(1).  "A prisoner violating the provisions of his or her parole . . . is treated as an escaped prisoner and is liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment."  MICH. COMP. LAWS § 791.238(2).

On April 16, 1996, defendant Straub completed a MDOC form which indicated that plaintiff's sentence "02) 1Y8M -- 4Y FOR POSS LESS THAN 50 GRAMS OF HEROIN" was eligible for termination and would be considered terminated effective July 11, 1995. The same document indicated that plaintiff would continue serving his sentences of 5-to-10 years' imprisonment on his 1995 convictions. Plaintiff's exhibits include a second copy of this form that is marked as being "VOID--SUPREME COURT IN WAYNE COUNTY PROSECUTOR (O'HAIR V DOC /6-21-1996)."[7]

On January 8, 2002, plaintiff was released on parole. Plaintiff violated the terms of his parole, and was returned to prison on or about December 2, 2003. (docket # 1 at 13).

On June 24, 2004, MPF's warden signed a certificate of discharge/sentence termination form stating, "In accordance with PD 03.01.130 Discharge or termination of sentence, the following action is taken: . . . "Termination of prisoner's non-controlling sentence of Prefix C, Record 05, 5y-10y is hereby made effective 5/7/04." The same document indicated that plaintiff would continue to serve his 1995 sentence for his conviction for assault with intent to do great bodily harm less than murder: "Prefix C, Record 04, 5y-10y."[8]

_____

[7]On May 29, 1996, the Michigan Supreme Court issued its opinion in *Wayne County Prosecutor v. Department of Corrections*, 548 N.W.2d 900 (Mich. 1996). This opinion is referred to throughout plaintiff's complaint as the *O'Hair* decision, O'Hair being that last name of the Wayne County Prosecutor at that time, John D. O'Hair.

[8]The February 23, 1995 Judgment of Sentence/Commitment to Corrections Department shows that plaintiff was sentenced as a habitual offender, 4th felony offense. As was typical of then-prevailing state practice, plaintiff was first sentenced on each of his individual criminal convictions, and immediately thereafter these sentences were vacated in favor of a single habitual offender sentence. *See e.g.*, *People v. Fanin*, No. 247657, 2004 WL 2239485, at *1 (Mich. Ct. App. Oct. 5, 2004). MDOC records referred to plaintiff's fourth and fifth criminal convictions as "Prefix C" Records "04" and "05" reflecting plaintiff's total of 5 criminal convictions. For a period of time MDOC records listed convictions 04 and 05 as if they had carried separate sentences running

On April 2, 2005, plaintiff advised ARUS Peruski of plaintiff's belief that MDOC's records concerning the calculation of his sentence were inaccurate.  Peruski contacted B. Kosloski, Records Office Supervisor at MPF.  (Compl. at 8).  On April 4, 2005, Ms. Kosloski sent a memorandum to plaintiff in response to plaintiff's question "regarding the termination of Sentence 02."  The body of Kosloski's memorandum is set forth verbatim below:

> Record 04 was ordered to be served consecutively to Record 02.  When sentences are ordered consecutive, they are added together to create one large sentence.  Each sentence by itself is effected [sic] by misconducts, forfeitures, reviews of special credits, etc., and then immediately following that sentence the next sentence will begin - again minus credits and is effected [sic] by the same actions.  When sentences are added together, only one set of dates is shown - which is a reflection of all those sentences added together minus appropriate credits.  No sentence in the "consecutive string" of sentences will terminate until all of those sentences have been completed.
>
> Please refer to PD 03.01.135 Termination of Non-Controlling Sentences for further clarification.[9]

(4/4/05 Memorandum).

_____

concurrently.  On June 24, 2004, this error was effectively corrected when plaintiff's "non-controlling sentence Record 05" was "terminated" on the MDOC's records system (effective May 7, 2004), and plaintiff continued to serve his 5-to-10 year sentence on "Prefix C, Record 04."  The recordkeeping adjustment made MDOC's records consistent with the Judgment of Sentence/Commitment which imposed a single habitual offender sentence of 5-to-10 years.  It did not entitle to plaintiff to a May 7, 2004 discharge from MDOC's custody.

[9]Paragraph LL of the version of PD 03.01.135 then in effect stated, "Except as set forth in Paragraph MM, *if a prisoner is serving consecutive sentences, none of the sentences which are part of the consecutive string shall be terminated until all sentences in that string have been served.*  If a prisoner is serving two or more consecutive strings consecutive sentences in the non-controlling strings shall be terminated on the completion of the appropriate maximum sentence, less applicable credits which could be earned.  However, if a sentence is consecutive to more than one consecutive string, that sentence shall remain active until the controlling string has been served, even though the other sentences in the non-controlling strings are terminated."  Policy Directive 03.01.135 ¶¶ LL (emphasis added).

-7-

On April 25, 2005, plaintiff wrote a letter to Warden Phillips, and in response defendant Kosloski provided plaintiff with a personal interview. During this interview, she provided plaintiff with a copy of her memorandum dated April 29, 2005, which stated as follows:

> You state you believe that you should not be serving on Record 02 and that Records 04 & 05 should be terminated effective 05/07/04. Records 04 and 05 were ordered to be served consecutive to Record 02. At the time of your commitment to MDOC only record 04 was entered consecutive to record 02. This has been corrected and Record 05 now reflects being consecutive to Record 02 as ordered in your Judgment of Sentence.[10] You did terminate off record 05 on 05/07/04 this termination was processed because Record 05 is not your controlling sentence. You will not terminate off of Record 02 because it is in the consecutive string of your controlling sentences. When sentences are ordered consecutive, they are added together to create one large sentence. Each sentence by itself is effected by misconducts, forfeitures, reviews of special credits, etc., and then immediately following that sentence the next sentence will begin - again minus credits, and it is effected by the same actions. When sentences are added together, only one set of dates is shown - which is a reflection of all those sentences added together minus appropriate credits. No sentence in the "consecutive string" of sentences will terminate until all of those sentences have been completed.
>
> Please refer to PD 03.01.135 "Termination of Sentences" for further clarification.
>
> You also address the issue of your days available for restoration on your Time Review and Disposition paperwork. The number of days you have available for restoration is 590. You have had the following forfeitures: 3/6/96-35 days, 5/24/96-30 days, 11/4/96-72 days, 2/26/97-70 days, 3/9/97-60 days, 7/2/00-108 days, 10/5/00-110 days, 10/15/00-100 days, 1/27/01-5 days = 590 days of forfeited time.

(4/29/05 Memorandum). Plaintiff was also provided with an April 29, 2004 Time Review and Disposition form which reflected that plaintiff was scheduled for discharge on November 26, 2005.

---

[10]Defendant Koslowski was correct that Judge Brown had sentenced plaintiff to serve 5-to-10 ten years on his 1995 convictions for assault with intent to do great bodily harm less than murder and entering without breaking, and that this sentence was to run consecutive to the remainder of plaintiff's sentence of possession of a controlled substance. There is no indication that anything done with regard to a "non-controlling" sentence had any impact whatsoever on plaintiff's discharge date.

On May 9, 2005, plaintiff filed a four-page grievance (MPF-05-00343-002).

Defendant Marlene Ford was the author of the Step I grievance response:

> Regarding the termination of your Record 02, it was terminated on 7/11/05, but that termination was made void per the court ruling in Wayne County Prosecutor (O'Hair) v. DOC 6/21/96. Please see attached Sentence Termination. Record 03 was terminated 5/1/94.
>
> Record 05 was terminated 5/7/04, as you stated. That leaves Record 04 and Record 02. Record 04 was made consecutive to Record 02. You will not terminate off Record 2 because it is in the consecutive string of your controlling sentences, as stated by Ms. Kosloski, the Record Office Supervisor. So your sentences were added together and you have one long sentence and the dates in your time review reflect that, showing only one set of dates. Also you can refer to PD 03.01.135 "Termination of Non-Controlling Sentences" for further clarification.
>
> Record 02 and 03 are not "one sentence", as you state. In fact, Record 03, as stated above, was terminated 5/1/94. Nor are Record 04 and 05 "one sentence". Record 02 and 03 are part of your B prefix and Record 04 and 05 are part of your C prefix, but when you violated parole and were sentenced for Record 04 and 05, the Judgment of Sentence made the new sentences consecutive to your present Record 02, which you were on parole for.

Plaintiff pursed a Step II appeal. The Step II response by Warden Phillips on June 22, 2005, reiterated that plaintiff still had time to serve. On July 11, 2005, plaintiff drafted a nine-page letter addressed to Director Caruso. Plaintiff may have intended this letter to serve as the equivalent of a Step III grievance appeal. The exhibits plaintiff attached to his complaint did not include a Step III grievance response.

On July 11, 2005, plaintiff drafted a document captioned as "Declaratory Ruling, Pursuant to: Public Act No. 306 of 1963 MCLA 24.263; § 24.264; Administrative Rule 791.1115." Jeff Baumann, Administrator of the Office of Audit, Internal Affairs and Litigation, acknowledged in an October 20, 2005 letter that his office had received plaintiff's request for a declaratory ruling

on July 18, 2005, and that pursuant to state administrative rules, plaintiff could consider his request

denied 30 days after July 18, 2005.  Plaintiff did not seek further review.

        In September of 2005, plaintiff was an inmate at MPF, which is located in Grand

Traverse County,  Michigan.  On September 12, 2005, plaintiff filed a habeas corpus petition in

Grand Traverse County Circuit Court, and the case was assigned to Judge Thomas G. Power.  *See*

*Petties v. Caruso, et al.*, No. 05-24847-AH (Grand Traverse County Circuit Court).[11]  On October

10, 2005, Judge Power issued a "Pre-Hearing Order" which stated as follows:

> A Petition for Writ of Habeas Corpus was filed by Plaintiff.
> This court has reviewed the motion.  Any opposing party shall, within twenty-one days of the date of this order, filed and serve a written response, together with any supporting documents, affidavits, briefs or memoranda on all parties of record and the Court Clerk.
> A reply from the moving party shall be served within thirty-five days of the DATE OF THIS ORDER.
>
>                      * * *
>
> Upon expiration of the above time limitations, the Court shall review all documents submitted and either schedule or dispense with oral argument, pursuant to MCR 2.119(E)(3).

(10/10/05 Pre-Hearing Order).

        On October 13, 2005, an assistant Michigan attorney general  wrote a letter addressed

to Judge Power, with a copy to plaintiff, regarding plaintiff's habeas petition.  (Compl. at 24-25).

The letter stated that the MDOC had not been served, requested relief from the pre-hearing order's

deadlines, and asked the court to order plaintiff to properly serve the MDOC.  The body of the letter

is set forth herein:

---

[11]Plaintiff's Grand Traverse County Circuit Court lawsuit generally named the same defendants as this lawsuit.  The two exceptions are (1) that plaintiff named a grievance coordinator as a defendant in state court; and (2) that plaintiff named Judge Power as a defendant in this lawsuit.

> Your Pre-Hearing Order was received at this office October 13, 2005. (See copy attached.) As of October 13, 2005, the Department of Corrections has not been served with any pleadings by prisoner Petties or this court regarding the above matter. Neither has prisoner Petties sent a courtesy copy of his pleadings to the Attorney General. Your Order requires a response from the opposing party within twenty-one (21) days. Because prisoner Petties has failed to serve a copy of his pleadings that are the basis for his request for relief, I am unable to prepare a response. I request that the court issue an order to the affect that prisoner Petties properly serve the Department of Corrections.

(10/13/05 Letter). On October 26, 2005, Judge Power issued the following Corrected Decision and Order:

> This Petition for Writ of Habeas Corpus appeared to be in the nature of an appeal of an administrative decision of the Department of Corrections concerning the calculation of the Plaintiff's sentence. The Court issued a pre-hearing order requiring a response to be filed by Defendants with a possible reply by Plaintiff. A letter from the Attorney General's office, representing Defendants, states that Defendants were not served with pleadings in this matter. The case has therefore not been properly commenced. The case is stayed.

(10/26/05 Corrected Decision and Order). Plaintiff's complaint does not allege any facts indicating that he complied Judge Power's order. Plaintiff alleges no facts concerning the outcome of his state-court case, nor any effort made to obtain relief from a final decision made by Judge Power through Michigan's appellate courts. Plaintiff does not allege that he filed a federal habeas corpus petition after exhausting his available state court remedies.

On November 26, 2005, plaintiff was discharged from prison. On May 8, 2006, plaintiff filed this lawsuit.

-11-

## Discussion

**1.     Eleventh Amendment Immunity**

Plaintiff's claims for monetary damages against all defendants in their official capacities are barred by Eleventh Amendment immunity.  Eleventh Amendment immunity is a threshold issue that should be raised and decided by the trial court.  *See Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002); *Johnson v. University of Cincinnati*, 215 F.3d 561, 570-71 (6th Cir. 2000).  A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment generally bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  The State of Michigan has not consented to civil rights suits in federal court.  *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004); *Abick v. Michigan*, 803 F.3d 874, 877 (6th Cir. 1986); *see also Hill v. Michigan*, 62 F. App'x 114 (6th Cir. 2003).  Defendants are entitled to judgment in their favor as a matter of law on plaintiff's claims for monetary damages against them in their official capacities.

**2.     State Law Claims for Damages Against Defendants in their Individual Capacities**

Plaintiff seeks an award of monetary damages against defendants in their individual capacities for alleged violations of Michigan's Constitution.  (Compl. at 4, 5, 6).  Michigan law does not provide a cause of action for monetary damages against individual government employees for

alleged violations of Michigan's constitution.  *See Jones v. Powell*, 612 N.W.2d 423, 426 (Mich. 2000); *Bennett v. Detroit Police Chief*, Nos. 262124, 262188, __ N.W.2d __, 2006 WL 3733225 (Mich. Ct. App. Dec. 19, 2006); *Neal v. Department of Corrections*, Nos. 253543, 256506, 2005 WL 326883, at * 5 (Mich. Ct. App. Feb. 10, 2005) ("Regardless of the [Michigan] constitutional rights allegedly violated, damage remedies against individual government employees for those constitutional violations do not exist."); *see also Anderson v. City of Monroe*, No. 05-cv-70255, 2006 WL 2077596, at * 5 (E.D. Mich. July 24, 2006); *HRSS, Inc. v. Wayne County Treasurer*, 279 F. Supp. 2d 846, 851 (E.D. Mich. 2003).  Plaintiff's complaint fails to state a claim against any defendant in this regard.

### 3.    Allegations that Defendants Committed "Crimes"

Throughout the complaint, plaintiff alleges that defendants committed crimes. Plaintiff lacks standing to bring a criminal action against defendants.  *See Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Martin v. Koljonen*, 89 F. App'x 567, 568 (6th Cir. 2004).

### 4.   Federal Claims for Monetary Damages Against Defendants in Their Individual Capacities

Defendants argue that plaintiff's complaint fails to state a claim and that they are entitled to qualified immunity.  The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), emphasized that the defense of qualified immunity must be addressed in proper sequence.  The initial inquiry must be whether the plaintiff has alleged facts showing that the defendants' conduct violated a constitutional right.  *Saucier*, 533 U.S. at 201; *see Koulta v. Merciez*,

-13-

477 F.3d 442, 445 (6th Cir. 2007); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006);

*see also Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006) ("Whether a

constitutional violation occurred is a threshold issue: if the officers' conduct violated no

constitutionally protected right, there is no need for further analysis."); *accord Caudill v. Hollan*, 431

F.3d 900, 908 n.5 (6th Cir. 2005)("[D]istrict courts . . . may not assume a constitutional violation

or skip to qualified immunity, even when qualified immunity analysis seems conclusive.").  Plaintiff

has not alleged facts sufficient to satisfy the threshold constitutional violation  requirement.

       Plaintiff alleges that all the defendants somehow conspired against him.  It is well

settled that conspiracy claims must be pled with some degree of specificity and that vague and

conclusory allegations unsupported by material facts are insufficient to state a claim under § 1983.

*Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *see Center for Bio-Ethical Reform, Inc. v.*

*City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007); *Jackson v. Madery*, 158 F. App'x 656, 659

(6th Cir. 2005); *Mettetal v. Vanderbilt Univ., Legal Dep't*, 147 F. App'x 577, 585 (6th Cir. 2005).

Plaintiff's conclusory allegations fall well short of alleging a viable civil conspiracy claim.

       Plaintiff's complaint expresses his dissatisfaction with Judge Power's orders in the

state habeas corpus lawsuit.  It is patent that plaintiff's claims against Judge Power are barred by

absolute judicial immunity.  *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *McCormick v. Braverman*,

451 F.3d 382, 399 (6th Cir. 2006); *Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2001) (A claim that

-14-

the state-court judge acted "maliciously or corruptly" and in excess of his jurisdiction is insufficient to overcome judicial immunity).[12]

Defendant Baumann was the author of a letter advising plaintiff that the MDOC had received plaintiff's "Request for a Declaratory Ruling" on July 18, 2005, and that plaintiff could consider his request denied as of August 17, 2005, pursuant to an administrative rule. Plaintiff did not allege that he sought further review as provided by state law.[13]   Plaintiff's complaint fails to allege any federal claim against defendant Baumann.

Plaintiff disagrees with defendant Ford's Step I grievance response. This fails to any federal claim. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999).  Plaintiff's allegations that defendant Ford improperly denied his grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug.3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar.28, 1994) (no constitutional right to a grievance procedure).  Plaintiff also disagrees with defendant Kosloski's responses to his inquiries concerning

---

[12]Plaintiff's complaint asks this court to review Judge Power's orders.  This court does not possess appellate oversight over the state courts.  Plaintiff's request that this court conduct appellate review and award him damages stemming from the defendant's orders is barred.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *see also Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007).

[13]*See* MICH. COMP. LAWS § 24.263; *see also Standifer v. Department of Corrections*, 468 N.W.2d 241 (Mich. Ct. App. 1990); *Human Rights Party v. Michigan Corrections Comm'n*, 256 N.W.2d 430 (Mich. Ct. App. 1977)

the administration of his sentences.  This fails to state any claim of constitutional dimension.

Moreover, defendants Ford and Kosloski had no power to order plaintiff's discharge from custody,

and they cannot be held liable for failure to grant relief they could not order.  *See Smith v. Campbell,*

250 F.3d 1032, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999).

   Plaintiff's allegations against defendant Straub relate to actions Straub purportedly

took in 1996, while Straub was the acting warden of a prison where plaintiff was confined.[14]

Plaintiff alleges that shortly after the Michigan Supreme Court issued its *O'Hair* decision, Straub

added a "void" notation to an April 16, 1996 form which had indicated that plaintiff's sentence 02

would  "terminate" effective July 11, 1995, and that plaintiff would begin serving his 5-10 year

sentences on his 1995 convictions. (Compl. at 7).  Despite the "void" notation, it is patent that the

April 16, 1996 document did not entitle plaintiff to discharge from MDOC's custody.  After all, less

than a year earlier plaintiff had been sentenced to a consecutive term of imprisonment of up to 10

years.

   The Michigan Supreme Court issued its "O'Hair" decision on May 29, 1996*.  See*

*Wayne County Prosecutor v. Department of Corrections*, 548 N.W.2d 900 (Mich. 1996).  The

question before the court was, "when a parolee has been convicted of another felony committed

while he is on parole is again subject to the jurisdiction of the Parole Board."  548 N.W.2d at 901.

The Michigan Supreme Court's decision focused on the issue of parole eligibility, not entitlement

to parole, much less the right to discharge from MDOC's custody.  The Michigan Supreme Court

---

  [14]Whether plaintiff's claims against this defendant are time-barred by the decade between the defendant's alleged actions and the filing of this lawsuit is not currently before the court.

examined the interplay between statutory provisions applicable to a Michigan parolee who committed another felony while he is on parole.  Mich Comp. Laws § 791.234(2) stated as follows:

> If a prisoner is sentenced for consecutive terms . . . the parole board shall have jurisdiction over the prisoner for purposes of parole when the prisoner has served the total time of the added minimum terms, less the good time credit allowed by statute.  The maximum terms of the sentences shall be added to compute the new maximum term under this subsection, and discharge shall be issued only after the total of the maximum sentences has been served less good time allowances . . . .

MICH. COMP. LAWS § 791.234(2).  Section 7(a)(2),  Mich. Comp. Laws § 768.7(a)(2) required that, "If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the latter offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense."  The Michigan Supreme Court held that a prisoner who committed another crime while on parole was required, at minimum, to serve his combined minimum sentences before he would regain eligibility for parole.  548 N.W.2d at 905-06.

Plaintiff had been sentenced on May 26, 1992, to serve 1 year and 8 months-to-4 years on his conviction for possession of a controlled substance.  On February 23, 1995, plaintiff had been sentenced to serve a consecutive sentence of 5-to-10 years.  Thus, under the *Wayne County Prosecutor* decision, plaintiff was required to serve the total of his combined minimum sentences, 6 years and 8 months, before he would be eligible for parole consideration.  As of June 1996, plaintiff would not be eligible for parole for another 2 years and 8 months.  The Michigan Supreme Court's decision did nothing to disturb the statutory requirement that, "The maximum terms of the sentences shall be added to compute the new maximum term under this subsection, and discharge

-17-

shall be issued only after the total of the maximum sentences has been served less good time allowances." MICH. COMP. LAWS § 791.234(2).  As required by statute, plaintiff's new maximum term was computed by adding plaintiff's maximum sentences into a single string.  The alleged actions by defendant Straub were consistent with state law and did not violate any of plaintiff's constitutionally guaranteed rights.

Plaintiff's complaint asserts that he was held in state custody for too long.  Plaintiff was discharged on December 26, 2005, but believes that his discharge should have occurred on May 7, 2004.  The only two named defendants who appear to have possessed authority to order plaintiff's discharge were Warden Phillips and Director Caruso. [15] Generally, claims of entitlement to speedier release from state prison must be pursued in federal court by bringing a habeas corpus action after exhausting available state remedies.  *See Hill v. McDonough*, 126 S Ct. 2096, 2101 (2006) ("'Challenges to the lawfulness of confinement or to particulars affecting its duration are the province of habeas corpus.'") (quoting *Muhammad v. Close*, 540 U.S. 749, 750 (2004)) *see Weatherly v. Kingsport Police Dep't*, 68 F. App'x 600, 601 (6th Cir. 2003) ("The writ of habeas corpus [] provides the exclusive remedy for challenges that necessarily imply the invalidity of the fact or duration of a prisoner's confinement.").[16]  In *Heck v. Humphrey*, 512 U.S. 477, 486-87

_____

[15]Liability of supervisory officers under 42 U.S.C. § 1983 cannot be based upon a *respondeat superior* theory.  *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006); *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005).  Furthermore, plaintiff has no claim against defendants Phillips or Caruso based on the denial of his grievance appeals.  *See Skinner*, 463 F.3d at 525.

[16] Michigan law expressly provides for forfeiture of good time credits previously earned on a sentence where parole has been revoked.  *See Ryan v. Department of Corrections*, 672 N.W.2d

-18-

(1994), the Supreme Court held that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." This rule has become known as *Heck*'s "favorable termination requirement." The plaintiff must first achieve a favorable termination of his available state or federal remedies challenging the underlying conviction or sentence before pursuing a section 1983 claim.

Plaintiff's section 1983 claim against defendants Phillips and Caruso is indistinguishable from the claim rejected by the Fifth Circuit in *Randell v. Johnson*, 227 F.3d 300 (5th Cir. 2000). In *Randall*, a former prisoner claimed an entitlement to monetary damages pursuant to section 1983 for every day he had "served over his sentence." 227 F. 3d at 301. The court of appeals upheld the district court's Rule 12(b)(6) dismissal of the complaint.[17] It found that, "Because

---

535, 542 (Mich. Ct. App. 2002).

[17]The federal courts have never served as an oversight and auditing committee for the administration of state sentences. The requirement that the plaintiff first pursue and obtain relief through available state review or thereafter seek and obtain federal habeas relief before bringing a section 1983 claim has the additional practical benefit of providing a district court reviewing a subsequent section 1983 claim with a well-developed record regarding the administration of the prisoner's sentence. *See e.g.*, *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006)("[T]he purpose of the *Heck* favorable termination requirement is to prevent prisoners from using § 1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of their confinement, and that punishments related to their term of imprisonment, or the procedures that led to them . . . must be attacked through a habeas petition.").

Randall [was] seeking damages pursuant to § 1983 for unconstitutional imprisonment and had not

satisfied the favorable termination requirement of *Heck*, he [was] barred from any recovery and

fail[ed] to state a claim upon which relief may be granted."[18] 227 F.3d at 301.  Plaintiff's complaint

fails to state a claim for the same reasons.

Assuming *arguendo* that plaintiff had satisfied  the initial requirement of alleging

facts establishing a constitutional violation, plaintiff falls far short of showing that the right or rights

he now claims each defendant violated was "clearly established" such that a reasonable official in

the defendant's position, at the time the act was committed, would have understood that his or her

behavior violated that right.  533 U.S. at 201; *see Koulta*, 477 F.3d at 448.   The Supreme Court's

recent decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004), examined the underlying purpose of

the requiring that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if
> constitutionally deficient, misapprehends the law governing the circumstances she

---

[18]Plaintiff can no longer bring a habeas corpus action in federal court because he is not in custody.  Furthermore, a federal court would dismiss any such action because plaintiff abandoned his state court habeas corpus action and otherwise failed to exhaust state remedies.  The Fifth Circuit's *Randall* decision found that Rule 12(b)(6) dismissal of a section 1983 claim was appropriate despite the fact that the former prisoner was not "in custody" and could no longer seek federal habeas corpus relief.  277 F.3d at 301. The Sixth Circuit has held that a former prisoner fails to state a claim upon which relief can be granted to the extent that post-release he challenges the duration of his confinement, but has not achieved the favorable termination required by *Heck*.  *See McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005); *accord Williams v. Consovoy*, 453 F.3d 173, 177-78 (3d Cir. 2006) (*Heck*'s favorable termination requirement applied and barred the plaintiff's section 1983 claim despite the fact that the plaintiff could no longer bring a habeas corpus action because he was no longer in custody); *Vickers v. Donahue*, 137 F. App'x 285, 290 (11th Cir. 2005); *Gibbs v. South Carolina Dep't of Probation, Parole & Pardon Services*, No. 97-7741, 1999 WL 9941, at * 2 (4th Cir. Jan. 12, 1999).

confronted. . . .  Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198.  The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see Silberstein*, 440 F.3d at 316.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense."  *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403-04 (6th Cir. 2007).  "Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201); *see Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003).  Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional,[19]  in light of preexisting law, the unlawfulness must be apparent. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).  "'[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the

---

[19]"Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law."  *Brosseau*, 543 U.S. at 199; *Lyons*, 417 F.3d at 572.

law.'" *Armstrong*, 432 F.3d at 699 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). The court must focus on whether, at the time defendant acted, the right asserted was "clearly established" by the decisions of the Supreme Court or the Sixth Circuit. *See Perez v. Oakland County*, 466 F.3d. 416, 427 (6th Cir. 2006); *Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004). "If reasonable officials could disagree on the issue, immunity should be recognized." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow to raise a question about), the conclusion for every-like situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Saylor v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002). "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key* 179 F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Perez*, 466 F.3d at 427. Plaintiff has not addressed, much less carried his burden. The alleged actions by the defendants did not violate any of plaintiff's clearly established rights and the calculations of his sentence by the responsible state officials appear solidly grounded in state law and regulations. Defendants' Rule 12(b)(6) motion to dismiss will be granted on the alternative ground of qualified immunity.

-22-

## <u>Conclusion</u>

For the reasons set forth herein, the court finds that defendant Power is entitled to absolute judicial immunity, and plaintiff's claims against defendant Power will be dismissed pursuant to 28 U.S.C. § 1915(e)(2).  The Rule 12(b)(6) by defendants Caruso, Straub, Phillips, Kosloski, Ford, and Baumann will be granted, and plaintiff's complaint will be dismissed.


Date:_____March 29, 2007_____          /s/ Robert Holmes Bell_____
                                            ROBERT HOLMES BELL
                                            CHIEF UNITED STATES DISTRICT JUDGE